UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMY L. LAKE,

     Plaintiff,

    -v-      1:22-CV-656

HEALTHALLIANCE HOSPITAL
BROADWAY CAMPUS,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

SHELDON KARASIK    SHELDON G. KARASIK, ESQ.
Attorneys for Plaintiff
1127 Fordham Lane
Woodmere, NY 11598

BARCLAY DAMON LLP   BRIENNA LAUREN BRAMAN, ESQ.
Attorneys for Defendant   MICHAEL J. MURPHY, ESQ.
80 State Street
Albany, NY 12207

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

 Plaintiff Amy L. Lake ("Lake" or "plaintiff") brings this case on the heels of

over two years of COVID-19 vaccine-related litigation stemming from the

State of New York's (the "State") vaccine mandate (the "Vaccine Mandate").

10 N.Y.C.R.R. 2.61.  The Vaccine Mandate required covered healthcare workers to became fully vaccinated against COVID-19 before returning to work.

On August 26, 2021, the State amended the Vaccine Mandate to eliminate religious exemptions.  That change gave rise to numerous constitutional challenges before it was ultimately upheld by the Second Circuit.  *We the Patriots USA v. Hochul*, 17 F.4th 266 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2569 (2022).

On June 19, 2022, Lake filed this eight-count complaint against defendant HealthAlliance Hospital Broadway Campus ("Health Alliance" or "defendant").  Dkt. No. 1.  Plaintiff's complaint describes a common vaccine-mandate enforcement scenario:  Health Alliance, her former employer, implemented a mandatory vaccination policy that mirrored the State's vaccine mandate and refused to grant plaintiff a religious exemption.  *Id.* When plaintiff refused to get vaccinated, she was terminated.  *Id.*

Lake alleges that Health Alliance's decision to terminate her amounted to unlawful employment discrimination.  Dkt. No. 1.  Specifically, plaintiff's complaint sets forth claims for disability and religious discrimination under the Americans with Disabilities Act (the "ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and related provisions of the New York State Human Rights Law (the "NYSHRL").  *Id.*

- 2 -

On February 23, 2024, Health Alliance moved pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on Lake's claims.  Dkt. No. 30.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 32, 33.

## II. <u>BACKGROUND</u>[1]

### A. <u>Lake's Previous Vaccine Reaction</u>

In 2009, Lake received the Gardasil vaccine, a Human Papillomavirus vaccine.  Def.'s Statement of Material Facts ("Def.'s Facts"), Dkt. No. 31-35 ¶ 68.  Two weeks after receiving this vaccine, plaintiff began experiencing a tingling sensation in her legs and feet that traveled to her arms and hands.  *Id.* ¶ 69.  Once the tingling sensation subsided, plaintiff's hands still felt stiff and numb.  *Id.* ¶ 72.  The numbness in plaintiff's hands made it difficult for her to hold things.  Ex. F to Murphy Aff., Dkt. No. 31-7 at 35–37.[2]  Despite this, plaintiff did not see any medical professionals to treat these symptoms.  *Id.*; Def.'s Facts ¶¶ 70–71.  But after four months of doing some physical therapy exercises on her own, plaintiff's right hand "was pretty much back to

---

[1] The following facts are drawn from the parties' statements of material facts to the extent that those facts are well-supported by pinpoint citations to the record consistent with N.D.N.Y. L.R. 56.1. Upon review, there are several instances where plaintiff has failed to comply with L.R. 56.1. Specifically, plaintiff denies paragraphs 31, 32, 39 56, 57, 61, and 62 of defendant's statement of material facts but does not provide a pinpoint citation to the record that specifically controverts defendant's statement.  *See* Pl.'s Resp. ¶¶ 31–32, 39, 56–57, 61–62.  Therefore, the Court deems these statements admitted consistent with the Local Rules.  N.D.N.Y. L.R. 56.1(b).

[2] Pagination corresponds to CM/ECF.

normal." Def.'s Facts ¶¶ 74–75; Ex. F to Murphy Aff. at 36.  To date, though, plaintiff still has numbness and pain on the top of her left index finger.  Ex. F to Murphy Aff. at 35.

In 2012, Lake developed inflammatory bowel disease ("IBD") symptoms that she believes was also caused by the Gardasil vaccine.[3]  Def.'s Facts ¶ 76.  Plaintiff's symptoms worsened in 2013, which finally lead her to seek medical attention.  *Id.*; Ex. F to Murphy Aff. at 41–43.  Plaintiff was advised to cut out gluten and other processed foods from her diet.  Def.'s Facts ¶ 78.  Plaintiff adhered to this diet, which has alleviated her IBD symptoms.  *Id.* ¶ 79.

### B.  Lake's Employment with Health Alliance

Health Alliance is a hospital located in Kingston, New York.  Chen Aff., Dkt. No. 31-32 ¶ 1.  Health Alliance is part of the Westchester Medical Center ("WMC") Network.  *Id.*

In August 2018, Health Alliance hired Lake as an X-ray technician.  Def.'s Facts ¶ 3.  Plaintiff was responsible for taking X-ray images of patients in the Kingston Hospital emergency room.  *Id.* ¶ 5.  Defendant scheduled plaintiff to work "power weekend shifts," comprised of two sixteen-hour shifts.[4]  *Id.* ¶ 2.

---

[3] Lake was not formally diagnosed with IBD by her medical provider but was treated for her GI symptoms, such as bloody stool.  Ex. F to Murphy Aff. at 44.

During the evening portion of plaintiff's shifts there would be one or two other X-ray technicians and a transporter on shift with her. *Id.* ¶ 3. But after midnight, plaintiff was the only X-ray technician on shift. *Id.* ¶ 4.

### C. **Health Alliance's COVID-19 Vaccination Policy**

On August 13, 2021, WMC—defendant's parent company—implemented a mandatory COVID-19 vaccination policy (the "Policy"). Def.'s Facts ¶ 11. Under the Policy, WMC employees were required to become fully vaccinated against COVID-19 by September 30, 2021. *Id.* ¶ 13. The Policy permitted employees to seek a medical and/or religious exemption on or before September 7, 2021. *Id.* ¶¶ 14–15, 19.

If an employee's exemption request was denied, Health Alliance would provide them with a deadline by which to become fully vaccinated. Ex. 2 to Yezzo Aff., Dkt. No. 32-13 at 2–3. Thereafter, if the employee still chose to decline vaccination, defendant would place the employee on an unpaid leave of absence for a maximum of thirty days. Def.'s Facts ¶ 16; Ex. 2 to Yezzo Aff. at 3. If the employee failed to provide proof of vaccination during this thirty-day period, they would be terminated. Def.'s Facts ¶ 16; Ex 2 to Yezzo Aff. at 3.

---

[4] Plaintiff would report to work between 3:00 and 3:30 p.m. on Friday afternoon and work until approximately 8:00 a.m. on Saturday morning. Def.'s Facts ¶ 2. Plaintiff would then sleep at the hospital from 8:00 a.m. until the start of her second sixteen-hour shift at 3:30 p.m. *Id.* Plaintiff would then work until 8:00 a.m. on Sunday morning. *Id.*

On August 16, 2021, then-Governor Andrew Cuomo announced the Vaccine Mandate.  Def.'s Facts ¶ 17; *see* 10 N.Y.C.R.R. 2.61.  Under the Vaccine Mandate, all covered   healthcare workers in the State were required to receive their first dose of the COVID-19 vaccine by September 27, 2021, and to be fully vaccinated by September 30, 2021.  Def.'s Facts ¶ 17.

As originally enacted, the Vaccine Mandate permitted both religious and medical exemptions.[5]  *Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers*, OFF. OF THE GOVERNOR OF THE STATE OF NEW YORK, (Aug. 16, 2021), https://www.governor.ny.gov/news/governor-cuomo-announces-covid-19-vaccination-mandate-healthcare-workers.  The next day, WMC sent an alert to all employees informing them of the Vaccine Mandate.  Def.'s Facts ¶ 17.

In response to the Vaccine Mandate, WMC established both a "Medical Exemption Committee" and a "Religious Exemption Committee" to review medical and religious exemption requests.  Def.'s Facts ¶¶ 24, 25, 49.  The Religious Exemption Committee would first review the employee's request to

---

[5]  Though not specifically stated by either party, the State amended the Vaccine Mandate to eliminate religious exemptions on August 26, 2021.  10 N.Y.C.R.R. § 2.61.

determine whether they were "patient facing"[6] or not before deciding whether
to grant or deny the medical exemption  *Id.*

### D. **Lake's Request for a Medical Exemption**

On September 7, 2021, Lake submitted a written request for a medical
exemption from the Policy.  Def.'s Facts ¶ 21; Ex. F to Murphy Aff. at 191;
Pl.'s Statement of Additional Material Facts ("Pl.'s Add'l Facts"), Dkt. No. 32-
10 ¶ 2.  As part of her request, plaintiff submitted a letter from her
physician's assistant, Lusi Hart ("Hart") stating that she had "suffered an
adverse vaccine reaction in 2009, following Guardasil [sic] vaccination."
Def.'s Facts ¶ 30; Ex. F to Murphy Aff. at 191; Pl.'s Add'l Facts ¶ 2.  Plaintiff's
request for a medical exemption was received by defendant and sent to the
Medical Exemption Committee.  Def.'s Facts ¶ 23; Pl.'s Add'l Facts ¶ 3.

The Medical Exemption Committee found that Hart's letter did not
conclusively establish that Lake had a contraindication for the COVID-19
vaccine.  Def.'s Facts ¶ 32.  The Medical Exemption Committee concluded
that Hart was not an allergist or immunologist, or otherwise qualified to
determine or extrapolate from plaintiff's previous reactions to the Gardasil
vaccine that plaintiff was at risk of a reaction to the COVID-19 vaccine.
Def.'s Facts ¶ 31.  Thus, the Medical Exemption Committee concluded that in

---

[6] The Religious Exemption Committee defined "patient facing" positions as "having their primary roles and responsibilities  involve interacting with other workforce members and/or patients."  Def.'s Facts ¶ 54.

order to properly evaluate whether plaintiff had a vaccine contraindication, plaintiff would need the opinion of an allergist or immunologist. *Id.* ¶ 33.

The Medical Exemption Committee granted Lake a temporary medical exemption to submit an allergist or immunologist's evaluation until October 13, 2021. Def.'s Facts ¶ 34. But Lake refused to get a second opinion from one of these providers. *Id.* ¶¶ 37–39, 41.

On October 14, 2021, WMC emailed Lake to inform her that the temporary medical exemption had expired and that she would be suspended if she failed to submit proof of vaccination by 12:00 p.m. on October 20, 2021. *Id.* ¶ 44.

**E.  WMC Revises the Policy**

In the midst of Lake's efforts to receive this medical exemption, WMC reinstated the religious exemption to the Policy. On September 15, 2021, WMC sent an email to its employees informing them that this Court had issued a preliminary injunction enjoining the enforcement of the Vaccine Mandate. Def.'s Facts ¶ 18; *see Dr. A v. Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021).

WMC informed its employees that it would reinstate religious exemptions to its COVID-19 vaccine program until it received further guidance from the State or the courts. Def.'s Facts ¶ 18. WMC employees were permitted to submit a religious exemption request on or before September 24, 2021. *Id.*

**F.  <u>Lake's Request for a Religious Exemption</u>**

On September 23, 2021, consistent with WMC's email, Lake submitted a request for a religious exemption from the Policy.[7]  Def.'s Facts ¶ 46.  The Religious Exemption Committee reviewed plaintiff's religious exemption request and determined that her position as an X-ray technician was "patient facing."  *Id.* ¶ 55.

WMC determined that it was not operational to have another vaccinated employee always accompany plaintiff to prevent patients from coming into contact with plaintiff, who was unvaccinated.  Def.'s Facts ¶ 56.  Plaintiff worked overnight hours and was often the only X-ray technician taking images for patients in the emergency room.  *Id.*  It was also impossible to prevent plaintiff from coming into close contact with other WMC employees.  *Id.*  The Religious Exemption Committee determined that any X-ray technician at WMC would have been denied a religious exemption to the Policy due to the "patient facing" nature of the position.  *Id.* ¶ 58.

On October 11, 2021, WMC emailed Lake to inform her that her religious exemption request had been denied due to the nature of her job duties as an X-ray technician.  Def.'s Facts ¶ 60.  Plaintiff requested WMC re-evaluate her religious exemption request in the wake of  this Court's holding in *Dr. A v.*

---

[7]  According to Lake, receiving the COVID-19 vaccine conflicted with her beliefs as a devout Catholic due to the use of fetal "cell lines."  Ex. 14 to Yezzo Aff., Dkt. No. 31-25 at 3.

*Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021).  *Id.* ¶ 61; Ex. F to Murphy Aff. at 219.  WMC responded that there was no appeals process for religious exemption requests.  Def.'s Facts ¶ 62.

### G.  Lake's Termination from Health Alliance

Thereafter, WMC directed Lake to submit proof of her COVID-19 vaccination by October 18, 2021.  Def.'s Facts ¶ 64.  Plaintiff declined.  *Id.* ¶ 65.  As a result of her failure to comply with the Policy, plaintiff was terminated on October 28, 2021.  *Id.* ¶ 66.

### H.  Lake's Medical Exemption is Approved

After her termination, Lake submitted a second opinion from Dr. Richard Amerling, M.D. ("Dr. Amerling") to WMC.  Pl.'s Add'l Facts ¶ 17.  In his opinion, Dr. Amerling concluded that plaintiff "is at increased medical risk for adverse reactions to vaccinations, either traditional antigen vaccines or the new crop of mRNA based products."  *Id.* ¶ 18.  Dr. Amerling is not an allergist or immunologist.  *Id.* ¶ 19.  Nonetheless, after receiving plaintiff's medical exemption request and Dr. Amerling's letter, WMC granted Lake a medical exemption from the Policy and offered to re-hire her on June 15, 2022.  Pl.'s Resp. ¶ 20.  Instead, Lake filed this lawsuit.  *Id.* ¶ 21.

### I.  Administrative Remedies Sought

On March 3, 2022, Lake filed a charge of employment discrimination and retaliation against Health Alliance with the U.S. Equal Employment

Opportunities Commission (the "EEOC").  Pl.'s Add'l Facts ¶ 15.  Plaintiff

received a Right to Sue letter from the EEOC on March 21, 2022.  *Id.* ¶ 16.

## III.  LEGAL STANDARD

Under Rule 56, summary judgment is proper where "the movant shows

that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986) (citations omitted).  A fact is material if it "might affect the outcome of

the suit under the governing law."  *Id.*  In reviewing the motion, the district

court must "draw all reasonable inferences against the party whose motion is

under consideration."  *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir.

2022) (citation omitted).

## IV.  DISCUSSION

Lake's complaint alleges claims for disability and religious-based

employment discrimination against Health Alliance under the ADA, Title

VII, and the NYSHRL.  Compl. ¶¶ 20–76.  Plaintiff asserts that defendant

discriminated against her on the basis of her disability and her religious

beliefs when it refused to grant her an exemption from the Policy.  *Id.*

Plaintiff also argues that defendant subjected her to a hostile work

environment based on her disability and her religious beliefs.  *Id.*  Defendant

argues that it is entitled to summary judgment dismissing all of plaintiff's claims.  Def.'s Mem., Dkt. No. 31-36 at 10.

## A.  <u>Disability Discrimination</u> (Counts I and II)

First, Lake has brought claims for disability discrimination against Health Alliance under the ADA.  Compl. ¶¶ 20–27.  Plaintiff has pursued both a failure-to-accommodate and a hostile work environment theory.  *Id.*

The ADA was enacted in 1990 "to remedy widespread discrimination against disabled individuals."  *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).  As relevant here, Title I of the ADA is both proscriptive and prescriptive: it prohibits private employers from discriminating against qualified individuals on the basis of disability and requires employers to make reasonable accommodations for the known disabilities of qualified employees unless it would cause an undue hardship on the employer's business.[8]  42 U.S.C. § 12112(b)(5)(A); *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024) (quoting *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 234–35 (2d Cir. 2015) (per curiam)).

This language, "on the basis of disability" is critical.  To bring any claim under the ADA, plaintiff must be *disabled* within the meaning of the ADA. *See infra*.  Plaintiffs can bring an ADA disability discrimination claim under

---

[8]  The parties do not dispute that Health Alliance is a covered employee within the meaning of the ADA.

Title I based on: (1) disparate treatment; (2) disparate impact; (3) failure-to-accommodate; or (4) hostile work environment. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019); *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009); *Bennett v. N.Y. State Thruway Auth.*, 2024 WL 1053222, at *7 (N.D.N.Y. Mar. 11, 2024).

While each of these theories of disability discrimination requires a slightly different showing from plaintiffs, a showing that plaintiff is *disabled* within the meaning of the statute is the common denominator. [9] *See, e.g.*, *McMillan v. City of N.Y.*, 711 F.3d 120, 125–26 (2d Cir. 2013) ("A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."); *LaRose v. Am. Med. Response of Conn., Inc.*, --- F. Supp. 3d ----, 2024 WL 747732, at *3 (D. Conn. Feb. 23, 2024) ("[T]o establish a *prima facie* case of [disparate treatment] under the ADA, a plaintiff must show that: (1) his

---

[9] Both disparate treatment and failure-to-accommodate claims are analyzed using the *McDonnell Douglas* framework. *Tafolla v. Heilig*, 80 F.4th 111, 118 (2d Cir. 2023); *c.f.  Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co.*, 955 F.3d 305, 312 (2d Cir. 2020), *certified question accepted,* 35 N.Y.3d 962 (2020), and *certified question withdrawn,* 37 N.Y.3d 969 (2021) ("[F]ailure to accommodate claims do not require proof of discriminatory intent."). Hostile work environment claims are not analyzed under the *McDonnell Douglas* framework. *Ferrando-Dehtiar v. Anesthesia Grp. Of Albany, P.C.*, --- F. Supp. 3d ----, 2024 WL 1345345, at *11 (N.D.N.Y. Mar. 29. 2024) (Nardacci, J.).

employer is subject to the ADA; (2) he was disabled within the meaning of the

ADA; (3) he was otherwise qualified to perform the essential functions of his

job, with or without reasonable accommodation; and (4) he suffered an

adverse employment action because of his disability."); *Gary L. v. CSX

Transp., Inc.*, 2020 WL 6343289, at *3 (N.D.N.Y. Oct. 29, 2020) (quoting

*Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("ADA

hostile work environment claims are analyzed under the same frame work as

Title VII, except that in order to state a claim for hostile work environment

under the ADA, '[a] plaintiff must also demonstrate that [he] was subjected to

the hostility because of [his disability].'").  Accordingly, to survive summary

judgment on her disability discrimination claims, Lake must first establish

that she was disabled within the meaning of the ADA.

As relevant here, the ADA provides three standards for disability: actual

disability, a record of disability, and being "regarded as" disabled.  *See* 42

U.S.C. § 12102(1).  The ADA defines an "actual disability" as a "physical or

mental impairment that substantially limits one or more major life activities

of such individual[.]"[10] § 12102(1)(A).  Thus, to establish that she was

actually disabled under § 12102(1)(A), Lake must: "(1) show that she suffers

from a physical or mental impairment; (2) identify the activity claimed to be

---

[10]  As relevant here, major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102.

impaired and establish that it constitutes a major life activity; and (3) show that her impairment substantially limits the major life activity previously identified." *Innes v. Cnty. of Warren*, 2024 WL 865864, at *6 (N.D.N.Y. Feb. 29, 2024) (cleaned up) (Sannes, J.).

By contrast, the ADA defines an individual who is "regarded as" disabled as an individual "regarded as having such an impairment[.]" § 12102(1)(C). To establish that defendant regarded plaintiff as being disabled, she must demonstrate that she was "subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Innes*, 2024 WL 865864, at *9 (citations omitted).

Defendant argues that Lake cannot establish a *prima facie* case of disability discrimination because she cannot establish that she was disabled within the meaning of the ADA.   Def.'s Mem. at 21–29.  Plaintiff responds that she can demonstrate that she was disabled within the meaning of the ADA under §§ 12102(1)(A) or (C) because she suffered an adverse reaction to the Gardasil vaccine in 2009 and because defendant regarded her as being disabled.  Pl.'s Opp'n, Dkt. No. 32-11 at 12–18.

Upon review, and even accounting for her status as the non-movant, Lake cannot establish tending to support the conclusion that she was actually disabled under §12102(1)(A).  Plaintiff has not directed the Court to any

evidence that she suffered a physical impairment that substantially limited one of her major life activities.  It is undisputed that in 2009, Lake developed temporary paralysis in her hands and IBD symptoms.  Def.'s Facts ¶¶ 69–74.  To date, only plaintiff's left index finger remains impaired at all.  Def.'s Facts ¶¶ 74–75; Ex. F. at 36.  But plaintiff has not submitted any evidence or articulated any basis for concluding that her impairment substantially limited any of her major life activities.  In the absence of this kind of evidentiary showing, no reasonable factfinder could conclude that plaintiff suffered from a physical impairment that substantially limited one of her major life activities.

Lake is similarly unable to establish that Health Alliance regarded her as being disabled under § 12102(C).  It is undisputed that defendant extended plaintiff a temporary exemption to submit the required documentation from which the Medical Exemption Committee could determine whether to grant or deny plaintiff's medical exemption request.  Def.'s Facts ¶¶ 33–34.  It is also undisputed that the Medical Exemption Committee did not reach a determination regarding plaintiff's medical exemption until October 14, 2021, when plaintiff failed to submit any documentation in support of her medical exemption request.  *Id.* ¶ 44.  Put simply, defendant did not regard plaintiff

as being disabled when it provided her a temporary exemption—it regarded her request as unsupported by the requisite medical documentation.[11]

Thus, Lake cannot establish that she was disabled within the meaning of the ADA.  Accordingly, Health Alliance's motion for summary judgment dismissing plaintiff's disability discrimination claims will be granted.[12]

## B.  Religious Discrimination (Counts III and IV)

Lake has also brought claims for religious discrimination under Title VII. Compl. ¶¶ 35–48.  As with her disability discrimination claims, plaintiff has pursued both a failure-to-accommodate claim and a hostile work environment claim based on Health Alliance's refusal to grant her a religious-based exemption.  *Id.*

### 1.  Failure-to-Accommodate

First, Lake has asserted a failure-to-accommodate under Title VII based on Health Alliance's refusal to grant her a religious exemption from the Mandate.[13]  Compl. ¶¶ 35–42.  Defendant argues that it is entitled to

---

[11]  Even if Lake could establish that Health Alliance regarded her as being disabled, "the 'regarded as' theory of disability is no longer actionable in the context of a failure to accommodate claim" under the ADA Amendments Act of 2008 ("ADAA").  *LaRose*, 2024 WL 747732, at *5 (quoting 42 U.S.C. § 12201(h)).

[12]  Even if Lake were able to establish a *prima facie* case of either her failure-to-accommodate claim *or* her hostile work environment claim dismissal is still warranted.  As discussed, *infra*, defendant has established that it would have suffered an undue hardship had it granted plaintiff an exemption from the Policy and the record is wanting of any evidence that plaintiff experienced any discriminatory intimidation, ridicule, or insult on the basis of her disability or otherwise.

summary judgment on this claim because it could not have provided plaintiff with an exemption to the Policy without suffering an undue hardship.  Def.'s Mem. at 10–21.

Title VII makes it unlawful for private employers to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  The statute defines religion broadly to include "all aspects of religious observance and practice, as well as belief," and requires employers to "reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the business."  § 2000e(j).

Failure to accommodate claims are analyzed using the *McDonnell Douglas* framework.  *Tafolla*, 80 F.4th at 118; *c.f.  Brooklyn Ctr. for Psychotherapy, Inc.*, 955 F.3d at 312 ("[F]ailure to accommodate claims do not require proof

---

[13]  Lake has not briefed a disparate treatment claim against Health Alliance in her opposition papers.  Pl.'s Opp'n at 18–22.  However, to the extent that she wishes to proceed on a disparate treatment claim in addition to her failure-to-accommodate claim, plaintiff has failed to establish a *prima facie* case of disparate treatment because it is undisputed that the Policy imposed additional employment requirements leaving plaintiff unqualified for her position.  *See Tandian v. State Univ. of N.Y.* , --- F. Supp. 3d ----, 2023 WL 8827577, at *7 (N.D.N.Y. Oct. 13, 2023) (Scullin, J.) (holding that receiving a COVID-19 vaccine became a "condition" of the plaintiff's employment and rendered her unqualified for her position).  Further, as Health Alliance points out, the record is wanting of *any* evidence of intentional discrimination from which a reasonable fact finder could conclude that defendant's proffered reason for terminating plaintiff—her failure to comply with the Policy—was pretext for religious discrimination.  Def.'s Mem. at 12–13.

of discriminatory intent.").  Under this familiar framework, a plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  To establish a *prima facie* case for a failure to accommodate claim, Lake must establish that (1) she held a bona fide religious belief that conflicted with an employment requirement; (2) she informed her employer of this belief; and (3) she was disciplined for her failure to comply with the conflicting employment requirement.  *See Verne v. N.Y.C. Dep't of Educ.*, --- F. Supp. 3d ----, 2023 WL 6387274, at *15 (S.D.N.Y. Sept. 29, 2023) (citing *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to show that it could not accommodate plaintiff's religious beliefs without suffering an undue hardship.  *Verne*, 2023 WL 6387274, at *15 (quoting *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 695 (S.D.N.Y. 2011)).  As the Supreme Court recently clarified in *Groff v. DeJoy*, an "undue hardship" in the Title VII context refers to a "substantial burden" on the employer's business.  600 U.S. 447, 471 (2023).

Upon review, Lake has identified evidence from which a reasonable fact finder could determine that she has established her *prima facie* case.  The parties do not dispute that plaintiff is Catholic, that she requested a religious exemption to the Policy, that she was denied an exemption, and that she was

terminated from her position as of October 28, 2021.  Def.'s Facts ¶¶ 46, 66; Ex. 14 at 3.  Thus, the burden shifts to defendant to establish that it would have suffered an undue hardship if it had provided plaintiff with an accommodation to the Policy.  *Verne*, 2023 WL 6387274, at *15 (quotation omitted).

Health Alliance argues that it would have suffered an undue hardship if it had provided Lake with the accommodation she requested—an exemption from the Policy—because it would have violated existing state law and suffered both financial and operational hardships.  Def.'s Mem. at 15–21.  In defendant's view, granting Lake an exemption would have forced it to choose between violating state law and exposing its patients and vaccinated employees to an unvaccinated employee—plaintiff.  *Id.*

In opposition, Lake raises three arguments.  First, plaintiff argues that Health Alliance could have provided her with *other* accommodations so long as plaintiff was not employed in a manner that qualified her as "personnel" under the Mandate.  Pl.'s Opp'n at 18–22.  Plaintiff is correct that the only religious accommodation that Health Alliance could have provided her under the Mandate was to reassign her so that she was no longer considered "personnel."  *We the Patriots USA, Inc.*, 17 F.4th at 370.  But while correctly stated, this argument is unavailing to plaintiff: it is undisputed that plaintiff

requested a religious *exemption* from the Policy—not a reassignment.  Def.'s Facts ¶ 46.

Second, Lake argues that Health Alliance could have granted her an exemption because the State was temporarily enjoined from enforcing the Mandate during the pendency of her request.  Pl.'s Opp'n at 18–22.  Contrary to plaintiff's assertion, this Court's temporary bar on the State's enforcement of the Mandate did *not* render the Mandate invalid.[14]  *See D'Cunha v. Northwell Health Sys.*, 2023 WL 7986441, at *8 n.3 (2d Cir. Nov. 17, 2023) (summary order) (citing *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, 2023 WL 3467143, at *5 n.5 (S.D.N.Y. May 15, 2023)).  Rather, the Court merely enjoined State officials from enforcing the Mandate.  *Id.*  In short, despite plaintiff's fortuitous timing, defendant was still at risk of future enforcement actions for exemptions granted while the preliminary injunction was in place.  *Cagle v. Weil Cornell Medicine*, 680 F. Supp. 3d 428, 437 (S.D.N.Y. 2023) (quoting *Dennison*, 2023 WL 3467143, at *6 n.5) ("That a

---

[14]  Plaintiff's argument embodies what has been referred to as the "writ of erasure fallacy." Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 938–40 (2018).  The fallacy presumes that when a federal court holds that a statute is unconstitutional, the statute is null and void.  This is incorrect.  Federal courts do not have the power to veto or repeal acts of the state legislature via judicial review.  Judicial review does not act as an executive veto.  Rather, federal courts may enjoin *state officials* from taking steps to enforce a particular statute.  *See Ex parte Young*, 209 U.S. 123 (1908).  Thus, if an injunction is dissolved the State may enforce the statute against violators for conduct that occurred while the injunction was in place.  *Cagle v. Weil Cornell Medicine*, 680 F. Supp. 3d 428, 437 (S.D.N.Y. 2023) (quoting *Dennison*, 2023 WL 3467143, at *6 n.5). Put simply, when a court issues an injunction against a state from enforcing a particular statute—be it temporary or permanent—defendant may still demonstrate that it would suffer an undue hardship if it engaged in conduct that violates the statute.

court has temporarily, and then preliminarily, enjoined enforcement does not mean employers were free, let alone required, to ignore the Mandate. Were the rule otherwise, employers would be required to accurately predict the outcome of litigation in order to avoid liability for discrimination on one hand, or liability for violating state law on the other.").

Third, Lake argues that Health Alliance cannot demonstrate that it would have suffered an undue hardship as defined by the Supreme Court in *Groff*. Pl.'s Opp'n at 18–22. But as discussed *supra*, defendant can make this showing based on the legal consequences that would stem from violating the Vaccine Mandate. In addition to the fact that granting religious exemptions was not permitted under the Vaccine Mandate, defendant has also established that it would have suffered a substantial financial and operational burden on its business as a hospital had it permitted Lake to continue working while unvaccinated.

It is undisputed that Lake's job duties required her to be in close proximity to patients. It is undisputed that as an X-ray technician, plaintiff was responsible for taking X-ray images of patients. Def.'s Facts ¶ 5. To do so, plaintiff was required to be near the patient.[15] *Id.* ¶¶ 7–8. Further, it is undisputed that plaintiff was often the only X-ray technician working during

---

[15] Lake would place a lead shield over the patient, place the "cassette" behind the patient, and line up the X-ray tube with the patient's body. Def.'s Facts ¶ 5.

the night shift.  *Id.*  ¶¶ 2,4.  Therefore, the only way to prevent plaintiff from encountering patients would have been to assign a vaccinated employee to accompany plaintiff.  *Id.*  But even that would have exposed defendant's vaccinated employees to plaintiff and caused operational hardships.  *Id.*  This is precisely the kind of context-specific application of the undue hardship standard contemplated by the Court in *Groff*.  *See Groff*, 600 U.S. at 478; *see also Dennison*, 2023 WL 3467143, at *5 (citing *Bey v. City of N.Y.*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to break the law.").

Upon review, Health Alliance has established as a matter of law that it would have suffered an undue hardship had it granted plaintiff a religious exemption.  Accordingly, Lake's Title VII failure-to-accommodate claim will be dismissed.

## 2.  **Hostile Work Environment**

Lake has also brought a hostile work environment claim under Title VII. Compl. ¶¶ 43–48.  Health Alliance argues that it is entitled to summary judgment on this claim because plaintiff has adduced no evidence of discriminatory intimidation, ridicule, or insult on the basis of her religious beliefs.  Def.'s Mem. at 30.

To survive summary judgment on her hostile work environment claim under Title VII,[16] a "plaintiff must establish that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harlow*, 2024 WL 1126736, at *7 (cleaned up).  To make this showing, a plaintiff must demonstrate "either a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment." *Krul v. DeJoy*, ---- F. Supp. 3d ----, 2023 WL 8449589, at *33 (N.D.N.Y. Nov. 6, 2023)).  This standard contains both subjective and objective elements: a plaintiff must subjectively perceive her workplace to be abusive *and* the misconduct at issue must be severe or pervasive enough to create an *objectively* hostile or abusive work environment.  *Id.* at 34.

Upon review, Lake has not marshaled sufficient evidence from which a reasonable fact finder could conclude that her work environment was objectively hostile or abusive.  Plaintiff's opposition merely restates the governing legal standard for hostile workplace claims.  Plaintiff points to no evidence that places into dispute whether she suffered any objectively hostile working conditions.  Therefore, Lake has not carried her burden on summary

---

[16]  Hostile workplace claims brought under Title VII and the NYSHRL are assessed using the same standard.  *Harlow v. Molina Healthcare, Inc.*, --- F. Supp. 3d ----, 2024 WL 1126736, at *7 (N.D.N.Y. Mar. 15, 2024) (quoting *Banks v. General Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023)).

judgment.  Accordingly, plaintiff's Title VII hostile workplace claim must be dismissed.

C.  **State Law Claims** (Counts V, VI, VII, and VIII)

Lake has also brought disability and religious discrimination claims under the NYSHRL.  Compl. ¶¶ 49–76.  In light of the dismissal of plaintiff's federal claims the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

V.  **CONCLUSION**

Lake's religious and disability discrimination claims do not survive summary judgment.  Her disability discrimination claims fail because she cannot establish that she was actually disabled, or regarded as disabled, within the meaning of the ADA.  Plaintiff's religious discrimination claims fare no better.  While she established a *prima facie* case of a failure to accommodate claim, defendant carried its burden to establish that it would have suffered an undue hardship if it had granted plaintiff a religious exemption.  Plaintiff's hostile work environment claim appears to have been merely an afterthought.  Plaintiff has not identified evidence that she suffered an objectively hostile work conditions because of her religious beliefs.

Without any federal claims remaining, plaintiff's state law claims will also be dismissed pursuant to § 1367(c)(3).

Therefore, it is

ORDERED that

1.  Defendant's motion for summary judgment is GRANTED; and

2.  Plaintiff's complaint is DISMISSED; and

3.  The Clerk of the Court is ordered to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  June 27, 2024
        Utica, New York.